IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| DYCOAL, INC. | ) | |
| Debtor. | ) | |
| | ) | |
| ———————————————————— | ) | |
| | ) | |
| DYCOAL, INC., et al., | ) | Civil Action No. 05-679 |
| | ) | |
| Plaintiffs, | ) | Bankruptcy No. 99-24594 |
| | ) | Adversary No. 05-2206 |
| v. | ) | |
| | ) | Judge Thomas M. Hardiman |
| INTERNAL REVENUE SERVICE, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

This case pits a debtor, some of its secured creditors, and privies in contract (collectively, Plaintiffs) against the Internal Revenue Service (IRS or Service). Plaintiffs have prosecuted this adversary proceeding with urgency because they stand to gain millions of dollars if they can monetize tax credits potentially available under §29 of the Internal Revenue Code. In stark contrast, the IRS has demonstrated little desire to bring to a definitive conclusion the issues Plaintiffs have pressed upon it. Indeed, from October 2000 until November 2003, the Service refrained from issuing any private letter rulings (PLR's) regarding §29 credits. When a PLR finally was issued, it not only failed to provide Plaintiffs and their prospective investors with the comfort they sought, but the content of the PLR was such that Plaintiffs wish the IRS had remained silent. Accordingly, Plaintiffs now seek a judicial remedy. For the reasons that follow, however, the Court finds that the IRS is entitled to judgment on the pleadings.

## I.   Parties

Plaintiffs in this case can be divided into three groups:  (1) Dycoal, Inc. (Dycoal), which

is a debtor in bankruptcy; (2) three secured creditors of Dycoal known as KI Development LLC

(KI), successor-in-interest to Komar Industries, Startec Energy, Inc. (Startec Energy), and Startec

Processing LLC (Startec Processing) (collectively, Secured Creditors); and (3) nine single-

purpose entities formed to receive from Dycoal ownership of five synthetic fuel production

facilities, known as briquetters (Briquetters):  Northwestern Synfuels LLC, H 1 Synfuels LLC,

H 2 Synfuels LLC, H 3 Synfuels LLC, I Synfuels LLC, P Synfuels LLC, H. Briquetters Ltd.,

I. Briquetter Ltd, and P. Briquetters Ltd.  Also involved in this case, though not a party, is

Dycoal's parent, Fairview Inc. (Fairview).

Defendants are the IRS and ARK Technology Design, a secured creditor of Dycoal that is

a nominal Defendant.

## II.   Procedural History

On June 16, 1999, Dycoal filed a petition for reorganization under Chapter 11 of the

Bankruptcy Code, 11 U.S.C. §301(a), with the U.S. Bankruptcy Court for the Western District of

Pennsylvania.  Approximately one year later, on June 6, 2000, the Bankruptcy Court entered an

order (Confirmation Order) confirming Dycoal's plan of reorganization (Plan).

Almost five years after Dycoal's Plan was confirmed, on February 10, 2005, Plaintiffs

filed an adversary proceeding against Defendants seeking:  (1) a determination of the ownership

of the Briquetters; (2) a declaration that the Plaintiffs qualify for tax credits under §29 of the

Internal Revenue Code; and (3) enforcement of the Plan against the IRS.

In response, on April 20, 2005, the IRS filed a motion for judgment on the pleadings, arguing that the Bankruptcy Court lacked jurisdiction to hear the case. The IRS also claimed that the issue of Plaintiffs' entitlement to §29 credits was not ripe for adjudication and the Service was not bound by either the Plan or the Confirmation Order. Before the Bankruptcy Court ruled on the matter, on May 17, 2005, the IRS filed a motion requesting this Court to withdraw the reference. In an order issued on May 27, 2005 the Bankruptcy Court granted the Service's motion for judgment on the pleadings as to Count III of the adversary complaint. On June 30, 2005, the Bankruptcy Court issued an opinion likewise dismissing Count II. *See In re Dycoal*, 327 B.R. 220 (Bankr. W.D. Pa. 2005). In *Dycoal*, Chief Bankruptcy Judge McCullough granted the Service's motion for judgment on the pleadings, holding that Plaintiffs could not obtain a declaration that their pre-confirmation tax credits were valid because no tax return seeking such credits had been filed and the IRS had not challenged such credits. *Id.* at 227.

Following the Bankruptcy Court's decision, Plaintiffs then filed an amended complaint on July 19, 2005 which the IRS answered on August 4, 2005. After conferring with the parties and concluding that the cause would eventually be presented to this Court, the undersigned withdrew the reference from the Bankruptcy Court on October 18, 2005 to avoid delay and duplicative litigation. After the reference was withdrawn, the IRS filed a motion for judgment on the pleadings on November 7, 2005. The parties have briefed the issues extensively and the Court heard oral argument on the Service's motion on December 21, 2005.

## III.    Standard of Review

A motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure is analyzed using the same standard as a motion to dismiss for failure to state a

claim under Rule 12(b)(6).  *Turbe v. Gov't of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir.

1991); *Regalbuto v. City of Philadelphia*, 937 F. Supp. 374, 376-77 (E.D. Pa. 1995).  In deciding

a Rule 12(c) motion, the district court must view the facts and inferences to be drawn from the

pleadings in the light most favorable to the non-moving party.  *Janney Montgomery Scott, Inc. v.*

*Shepard Niles, Inc.*, 11 F.3d 399, 406 (3d Cir. 1993).  Judgment will be granted only "if it is

clearly established that no material issue of fact remains to be resolved and that the movant is

entitled to judgment as a matter of law." *Institute for Scientific Information, Inc. v. Gordon and*

*Breach, Science Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991) (citing *Jablonski v. Pan*

*American World Airways*, 863 F.2d 289, 290-91 (3d Cir. 1988)).

## IV.    Facts

### A.    Background

In December of 1996, Startec Energy entered into agreements to supply, construct, and

install the Briquetters to produce synthetic fuel from coal feedstock.  Such "synfuels" were

intended to be deemed "Qualified Fuels" within the meaning of §29(c)(1)(C) and (f) of the

Internal Revenue Code, which provide for lucrative tax credits under certain conditions.  There is

no dispute that the Briquetters were financed and built for the principal purpose of monetizing

the tax credits potentially available under §29.

4

In June of 1998, the Briquetters were assigned to Dycoal and installed in their present locations. The production of synthetic fuel then was tested and the parties responsible for the Briquetters agreed that they were fully operational. Plaintiffs also allege that synthetic fuel, differing significantly in chemical composition from the coal feedstock used to produce it, was produced prior to July 1, 1998. This synthetic fuel, along with additional fuel produced in 1999, was sold to unrelated third parties. Dycoal and its parent, Fairview, took a depreciation deduction for the Briquetters on their consolidated 1998 tax return (Depreciation Deduction), believing they were placed in service before July 1, 1998. Absent the Depreciation Deduction, Dycoal and Fairview would have received taxable income of $52,221 that year.

Dycoal filed for Chapter 11 bankruptcy protection in June of 1999 because of disputes with Startec Energy and Komar. Dycoal did not list the IRS as a creditor on its bankruptcy schedules and the IRS did not file a proof of claim. The disputes that precipitated the bankruptcy filing were resolved by the distribution of ownership interests in the Briquetters to various interested parties. In an agreement included in the Confirmation Order entered on June 6, 2000, Startec Energy and Komar took Dycoal's three Briquetters, with the option to return title to them in exchange for payment on their existing claims. The Plan also provided that all other creditors, except Dycoal's parent Fairview, would be paid in full. The foregoing agreements were acceptable to the parties based on the Briquetters' prospective value to investors who would monetize them to take advantage of the §29 credits. Most important to this dispute, the Confirmation Order made factual findings that the Briquetters were operational and placed in service prior to July 1, 1998. In addition, the Confirmation Order expressly bound governmental agencies who were served with the Plan.

5

Consistent with the Plan confirmed by the Bankruptcy Court, Komar and Startec Energy elected to receive title to the H 2 Briquetter, the I Briquetter, and the P Briquetter rather than receive payment of $4.5 million from the Debtor. In addition, Startec Energy and Komar paid $370,673 to satisfy half of the outstanding claims against Dycoal, while Fairview paid the remainder, including all administrative claims. Thus, all of Dycoal's creditors have been paid in full, except Fairview, which possesses a subordinated claim under the Plan.

Once the creditors were paid, Plaintiffs sought earnestly to monetize the Briquetters by pursuing investors to produce synfuels and reap millions of dollars of tax credits pursuant to §29 of the Internal Revenue Code. Accordingly, Komar spent more than $3.5 million to refurbish the Briquetters and prepare them for monetization.

To facilitate their efforts, Plaintiffs asked the IRS to issue a private letter ruling that consented to the critical "placed in service" findings contained in the Bankruptcy Court's Confirmation Order. Armed with such a PLR, Plaintiffs reasonably believed that the Briquetters would be a more viable investment opportunity for those who might be able to take advantage of §29 credits. To the Plaintiffs' dismay, however, the IRS elected not to issue any PLR's relating to §29 credits from October 2000 until November 2003.

After much prodding and negotiating by Plaintiffs, in early 2004 the IRS issued a PLR regarding the §29 credits and the Briquetters. Instead of unequivocally accepting the propriety of §29 credits, however, the PLR provided no such comfort. Even worse, Plaintiffs claim that the IRS included in the PLR language that disregards the factual findings of the Confirmation Order as irrelevant to any future determination regarding the placed in service dates for the Briquetters. Consequently, Plaintiffs argue that the ambiguity associated with the PLR and the Service's view

6

of the validity and binding effect of the Bankruptcy Court's factual findings have prevented monetization of the tax credits, thereby denying them the benefit of the bargain and threatening the success of the Plan.

**B.    The Amended Complaint**

Faced with what they found to be an untenable position in light of the Bankruptcy Court's June 30, 2005 decision, Plaintiffs filed a eight-count amended complaint on July 19, 2005. Count I claims that there is a cloud over title to the Briquetters insofar as the IRS may be a pre-petition creditor if the placed in service findings included in the Confirmation Order are invalid. Count II claims that if the placed in service findings are not binding on the Service, then the Depreciation Deduction was improper, Dycoal owes tax to the IRS, and the Court should determine that tax liability.   Count III asks the Court to find that Dycoal has no non-dischargeable obligations to the IRS based on the potential invalidation of the Depreciation Deduction.   Count IV seeks enforcement of the Confirmation Order against the IRS, specifically binding the Service to the factual determinations concerning the placed in service dates based on the potential claim it would have against Dycoal if the Depreciation Deduction were invalid. Count V seeks enforcement of the Confirmation Order against the IRS pursuant to several different provisions of federal law.   Counts VI, VII and VIII request declaratory relief, with Count VI requesting a determination of the placed in service dates, Count VII arguing for the application of *res judicata* to the Confirmation Order, and Count VIII asking the Court to estop the IRS from challenging the factual findings of the Plan.

The Service's motion for judgment on the pleadings argues that Counts I and III of the amended complaint do not present a ripe case or controversy.   In addition, the Service argues that

7

Counts II, and IV through VIII are barred by the jurisdictional provision of the Declaratory Judgment Act. 28 U.S.C. §2201(a). The IRS also argues that the Federal Government has not waived sovereign immunity for the counts that do not rely on the jurisdictional grant of §505(a) of the Bankruptcy Code. Finally, in the alternative, the Service argues that it is entitled to judgment as a matter of law if the Court finds jurisdiction to be proper.

## V.     Analysis

As noted previously, the Bankruptcy Court refused to hold as a matter of law that the pre-confirmation §29 credits were valid or viable because that request implicated future tax liabilities. In recognition of that decision, Plaintiffs now take a different tack by requesting only a declaration that the Bankruptcy Court's factual determination that the Briquetters were placed in service before July 1, 1998 is valid and binding on the IRS. Accordingly, Plaintiffs disclaim any request for prospective legal relief: "the 'placed in service' findings alone, do not entitle the Plaintiff's [sic] to §29 tax credits. Indeed, there are many other factual predicates necessary for Plaintiffs to show to be entitled to §29 tax credits, which factual predicates are subject to the consideration of the Internal Revenue Service . . . ." Am. Compl. at ¶8. Although such a declaration does not resolve finally the question of the validity of §29 credits, Plaintiffs reasonably believe that it will provide sufficient comfort for investors to monetize the Briquetters. Thus, Plaintiffs' various and sundry claims are all paths to the same destination: a judgment from this Court, binding on the IRS, that the Briquetters were placed in service before July 1, 1998.

A. **Sovereign Immunity**

Plaintiffs' first obstacle to recovery is the Service's entitlement to sovereign immunity. "It is well settled that the United States enjoys sovereign immunity from suits and, accordingly, may be sued only if it has waived that immunity.  The IRS, as an agency of the United States, is thus shielded from private actions unless sovereign immunity has been waived." *Beneficial Consumer Discount Co. v. Poltonowicz*, 47 F.3d 91, 93-94 (3d Cir. 1995) (internal citations omitted).  "Moreover, when the plaintiff seeks to sue the United States or an instrumentality thereof, he may not rely on the general federal question jurisdiction of 28 U.S.C. §1331, but must identify a specific statutory provision that waives the government's sovereign immunity from suit.  A waiver of immunity must be unequivocally expressed, and is construed strictly in favor of the sovereign." *Clinton County Com'rs v. U.S. E.P.A.*, 116 F.3d 1018, 1021 (3d Cir. 1997) (internal citations omitted).

Section 106 of the Bankruptcy Code provides, in pertinent part:

> (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
> (1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.
> (2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.
> (3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages . . . .

11 U.S.C. §106(a).  Counts I through VI of Plaintiffs' amended complaint point to one or more of

9

the foregoing sections as grants of jurisdiction in this case, and thus the Court finds that

sovereign immunity has been waived as to these six counts. However, the Court is unaware of

any valid waiver with regard to Counts VII and VIII, and thus the IRS is immune from suit on

those two counts.

### B.     Subject Matter Jurisdiction

#### 1.     Counts I and III - Validity of the Depreciation Deduction

Having addressed the waiver of sovereign immunity, the Court must next determine

whether it has subject matter jurisdiction.

> To satisfy Article III's 'case or controversy' requirement, an action must present
> (1) a legal controversy that is real and not hypothetical, (2) a legal controversy that
> affects an individual in a concrete manner so as to provide the factual predicate for
> reasoned adjudication, and (3) a legal controversy so as to sharpen the issues for
> judicial resolution. The case or controversy requirement must be met regardless of
> the type of relief sought, including declaratory relief.

*Armstrong World Industries, Inc. by Wolfson v. Adams*, 961 F.2d 405, 411 (3d Cir. 1992)

(internal citation and punctuation omitted).

Plaintiffs argue that a case or controversy exists relative to Counts I and III of the

amended complaint because the validity of the Depreciation Deduction is in dispute.

Specifically, they claim that the Depreciation Deduction was invalid if the Briquetters were not

placed in service prior to July 1, 1998, as found in the Confirmation Order. If the Depreciation

Deduction was invalid, the Service possesses a pre-petition tax claim which is a cloud on title to

the Briquetters.

Count I states: "in order to determine that the IRS did not have a Class 2 claim it is

necessary to determine that Fairview and the Debtor were entitled to claim a deduction for

depreciation of the Briquetters in the 1998 return, which requires *inter alia* a finding that the

Briquetters were placed in service before July 1, 1998." Am. Compl. at ¶72.  Similarly, Count III

argues that:

> the only way the IRS did not have a nondischargeable claim against the
> Debtor as of the filing of the Debtor's Chapter 11 Petition was if the Debtor
> and Fairview were entitled to claim a deduction for depreciation on
> Briquetters as set forth in the 1998 return.  In order for the Debtor and
> Fairview to be entitled to claim the depreciation deduction, it is necessary
> that the Debtor had been engaged in business and that the Briquetters have
> been placed in service before July 1, 1998.

Am. Compl. at ¶¶91-92.

The Court first notes that the amended complaint lacks any averment that the IRS has

expressly challenged, by audit or otherwise, the Depreciation Deduction taken by Fairview and

Dycoal.  In fact, counsel for the IRS made clear at oral argument that the IRS has no intention of

contesting the 1998 return, and is almost certainly prevented from doing so by the applicable

statute of limitations, which is three years.  26 U.S.C. §6501(a).  Furthermore, in its brief in

support of its motion for judgment on the pleadings, the IRS reiterated that it allowed the

Depreciation Deduction and offered to stipulate that there is no liability, dischargeable or

otherwise, for the fiscal year ending February 1999.  Nevertheless, Plaintiffs claim that the

Service's PLR – which arguably undermines the Bankruptcy Court's factual finding regarding

the placed in service dates for the Briquetters – constitutes a *bona fide* challenge to the

Depreciation Deduction.  The Court disagrees for several reasons.

First, the alleged controversy relates entirely to the Service's view that it is not bound by

the Confirmation Order.  The IRS admits that its PLR "contained qualifying language (again

unique to Plaintiffs) that effectively disregards the validity and binding effect of the Plan

11

Confirmation Order's 'placed in service' findings." Am. Compl. at ¶53. It is also undisputed that "the IRS has maintained that the 'placed in service' findings contained in the Plan Confirmation Order are irrelevant . . . ." Am. Compl. at ¶54. Count I points to "the IRS' failure to recognize the 'placed in service' findings contained in the Plan Confirmation Order as valid findings." Am. Compl. at ¶63. Thus, Plaintiffs claim that these assertions by the IRS created "fatal uncertainty" that precluded the monetization of the Briquetters because no rational investor would assume the risk that the §29 tax credits might be disallowed.

Although Plaintiffs have made clear that the IRS does not believe itself bound by the Confirmation Order's factual findings, they do not allege that the IRS has directly contested or denied the *facts* underlying those findings. In fact, the IRS has stated no definitive opinion regarding the placed in service dates for the Briquetters. The Service's refusal to agree to be bound by the Confirmation Order is not equivalent to an unfavorable determination of the facts contained therein. To the contrary, the Service has taken the position that it is forensic in nature and will only assess the appropriateness of synfuels produced by the Briquetters for §29 credits if and when such credits are taken.

Even if the Court were to interpret the actions of the IRS as contesting the facts underlying the findings made by the Bankruptcy Court, Counts I and III still fail to present a case or controversy. Plaintiffs' insistence notwithstanding, the requirements necessary for §29 credits are not the same as those required for valid depreciation deductions. Thus, the IRS could find that the placed in service dates do not support §29 credits without calling into question the Depreciation Deduction.

The Internal Revenue Code provides that "there shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)– (1) of property used in the trade or business, or (2) of property held for the production of income." 26 U.S.C. §167(a).  In defining the scope of the deduction, §168 states: "[e]xcept as otherwise provided in this section, the depreciation deduction provided by section 167(a) for any tangible property shall be determined by using--(1) the applicable depreciation method, (2) the applicable recovery period, and (3) the applicable convention." 26 U.S.C. §168(a).  In this case, Dycoal used the half-year convention to calculate the Depreciation Deduction.  Under this method, "all property placed in service during any taxable year (or disposed of during any taxable year)" is treated as "placed in service (or disposed of) on the mid-point of such taxable year." 26 U.S.C. §168(d)(4)(A).  Therefore, so long as the Briquetters were placed in service at *any time* prior to the conclusion of Dycoal's fiscal year on January 31, 1999, they would have qualified for the Depreciation Deduction. Accordingly, the IRS could choose to disagree that the Briquetters were placed in service before July 1, 1998 without contesting the validity of the Depreciation Deduction.  Accordingly, Plaintiffs' premise that a challenge to the Depreciation Deduction necessarily follows from a challenge to the Confirmation Order's placed in service dates is fallacious.

In light of the foregoing, the record is devoid of any challenge to the Depreciation Deduction by the IRS.  Even assuming the Service now were to change course, the statute of limitations would preclude any challenge to the Depreciation Deduction. *See* 26 U.S.C. §6501. Section 6501(a) of the Internal Revenue Code states: "[e]xcept as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the

13

return was filed (whether or not such return was filed on or after the date prescribed) . . . ." In this case, Plaintiffs have not cited any exception under which the statute of limitations period would be tolled or extended and the Court is unaware of one that applies.[1] Thus, regardless of any disagreement with the facts underlying Dycoal's 1998 tax return, the time for the IRS to challenge the Depreciation Deduction has long since passed.

In an effort to counter the Service's argument on the statute of limitations, Dycoal asserted at oral argument that 26 U.S.C. §6503(h) stayed the IRS from assessing tax. As the Service correctly notes, however, the automatic stay triggered by Dycoal's Chapter 11 petition does not apply to: "A) an audit by a governmental unit to determine tax liability; (B) the issuance to the debtor by a governmental unit of a notice of tax deficiency; (C) a demand for tax returns; or (D) the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment . . . ." 11 U.S.C. §362(b)(9). Thus, at any time before or during the Dycoal bankruptcy proceeding, the IRS could have challenged Dycoal's 1998 tax return. Because it did not do so, the statutory period lapsed several years ago. In sum, because Plaintiffs have not alleged that the IRS challenged the Depreciation Deduction, there is no case or controversy.

Plaintiffs also argue that "absent valid 'placed in service findings,' the IRS is a Class 2 creditor holding an unpaid, pre-petition claim." This is incorrect as a matter of law for the myriad reasons stated previously. Furthermore, even if the IRS had a pre-petition claim against

---

[1] 26 U.S.C. §6501(c)(1) and (2) provide for limitless assessment periods in the cases of "a false or fraudulent return with the intent to evade tax" or "a willful attempt in any manner to defeat or evade tax," both of which 26 U.S.C. §7206 classifies as a felony. There is no suggestion here that Dycoal's 1998 return constituted felony tax evasion.

14

Dycoal because the Depreciation Deduction was invalid, any such claim was discharged by the

Confirmation Order, which states:

> Debtor is discharged effective on the Consummation date from any liability
> on any 'claim' and from all 'debt' (as those terms are defined in Section 101
> of the Bankruptcy Code) that arose before the Confirmation Date, except for
> claims and debts that are reinstated by the express provisions of the Plan, or
> this Order, and Debtor's liabilities in respect thereof are extinguished
> completely, whether or not reduced to judgment, liquidated or unliquated,
> contingent or non-contingent, asserted or unasserted, fixed or unfixed,
> matured or unmatured, disputed or undisputed, legal or equitable, known or
> unknown that arose from any agreement of the Debtor entered into or
> obligation of the Debtor incurred before the Confirmation Date . . . .

Confirmation Order at ¶15.  Plaintiffs argue that a potential claim on behalf of the IRS could be

exempted from this general discharge by 11 U.S.C. §523(a)(1).  As the IRS correctly notes,

§523(a)(1) applies to individuals, not corporations.  *See In re Pelkowski*, 990 F.2d 737, 742 (3d

Cir. 1993) (citing *Garrie v. James L. Gray, Inc.,* 912 F.2d 808 (5th Cir. 1990)).

   Not only did the IRS not have a claim against the Debtor based on the Depreciation

Deduction, any claim it would have had has been discharged.  Because there is no controversy

regarding Dycoal's 1998 tax return or the Depreciation Deduction contained therein, the Court

lacks jurisdiction over Counts I and III of the amended complaint.

### 2.   Count II - Declaratory Judgment on the Depreciation Deduction

   In Count II, Plaintiffs seek a declaratory judgment that Dycoal is entitled to the

Depreciation Deduction.  Pursuant to Article III of the Constitution, "the case or controversy

requirement must be met regardless of the type of relief sought, including declaratory relief."

*Armstrong,* 961 F.2d at 411.  "Basically, the question in each case is whether the facts alleged,

under all the circumstances, show that there is a substantial controversy, between parties having

adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Step-Saver Data Systems, Inc. v. Wyse Technology,* 912 F.2d 643, 647 (3d Cir. 1990) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

In *Step-Saver*, the Court of Appeals enunciated a three-part test to analyze whether district courts possess jurisdiction over declaratory judgment actions. Judge Becker noted in *Step-Saver*:

> As many commentators have noted, it is difficult to define the contours of the ripeness doctrine with precision. The task is even more problematic when defining ripeness in the context of declaratory judgment actions, for two reasons. First, there is the considerable amount of discretion built into the Declaratory Judgment Act itself. Even when declaratory actions are ripe, the Act only gives a court the *power* to make a declaration regarding 'the rights and other legal relations of any interested party seeking such declaration,' 28 U.S.C. §2201; it does not *require* that the court exercise that power. Second, declaratory judgments are issued before 'accomplished' injury can be established, *see* E. Borchard, *Declaratory Judgments* 29 (1941), and this *ex ante* determination of rights exists in some tension with traditional notions of ripeness. Nonetheless, because the Constitution prohibits federal courts from deciding issues in which there is no 'case' or 'controversy,' U.S. Const. art. III, §2, declaratory judgments can be issued only when there is an actual controversy, 28 U.S.C. §2201. The discretionary power to determine the rights of parties before injury has actually happened cannot be exercised unless there is a legitimate dispute between the parties.

*Step-Saver*, 912 F.2d at 646-47.

In the instant case, Plaintiffs claim that 28 U.S.C. §1334, 11 U.S.C. §§105(a) and 1142, and Bankruptcy Rule 3020 confer jurisdiction upon this Court to issue the declaratory judgment sought in Count II. With one exception, however, the statutes upon which Plaintiffs rely address the broad power afforded courts to consider matters related to bankruptcy proceedings and

16

enforce plans of reorganization and confirmation orders. Plaintiffs argue that the relief sought in Count II falls within the Court's power, under §505(a) of the Bankruptcy Code, to determine the "amount or legality of any tax . . . ." Although it is true that the Declaratory Judgment Act excepts cases brought under 11 U.S.C. §505(a) from the general prohibition on declaratory relief in tax cases, §505(a) does not vitiate the case or controversy requirement; indeed, it plainly states that the relief must be sought "in a case or actual controversy."

As stated previously, the Court does not believe that the Depreciation Deduction is the subject of any actual case or controversy. Plaintiffs have neither shown that Dycoal's tax liability was in controversy during the bankruptcy proceedings, nor alleged that a disallowance of the uncontested Depreciation Deduction would determine the success of the Plan. In short, because Count II asks the Court to determine the "amount or legality" of a tax not in dispute, it does not satisfy the case or controversy requirement articulated by the Court of Appeals in *Step-Saver*.

Furthermore, to the extent that Plaintiffs seek any determination relating to future §29 credits under §505(a), the Court is likewise without jurisdiction. "Pursuant to section 505, a bankruptcy court has the jurisdiction only to determine tax liabilities; there is no grant of jurisdiction to decide issues that are antecedent to the determination of tax liability. . . . The ripeness doctrine was meant to prevent just such a situation." *In re Grand Chevrolet, Inc.* 153 B.R. 296, 299 (Bankr. C.D. Cal. 1993). Thus, because the Depreciation Deduction is not in controversy and the question of the validity of §29 credits is not ripe, the Court lacks jurisdiction to make any determination under §505(a).

### 3.    **Count VII -** *Res Judicata*

In Count VII, Plaintiffs claim that because the IRS issued a PLR denying that the factual findings of the Confirmation Order are binding on the Service, a controversy exists regarding the application of the doctrine of *res judicata*. Thus, Plaintiffs ask the Court to "enter an Order determining that the IRS is bound by the *res judicata* consequences of the Confirmation Order." Am. Compl. at ¶134. Stated another way, Plaintiffs seek an order that would preclude the IRS from challenging the placed in service dates for the Briquetters in some future case. As discussed previously, Count VII does not indicate an express waiver of sovereign immunity that allows Plaintiffs to proceed against the IRS. However, even assuming *arguendo*, that such a waiver were found, the Court still would lack jurisdiction over Count VII.

*Res judicata* applies when there is a final judgment on the merits involving the same parties and the same underlying facts and cause of action. *In re Continental Airlines, Inc.*, 279 F.3d 226 (3d Cir. 2002). As the Supreme Court has stated, "there is little to be added to the doctrine of *res judicata* as developed in the case law of this Court. A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). Here, the IRS does not seek to litigate, or relitigate, the placed in service dates established in the Confirmation Order. Indeed, the crux of Plaintiffs' complaint is that the IRS has assiduously avoided doing just that. Rather, Plaintiffs fear that the Service may, at some future time, contest the facts established by the Confirmation Order and disallow §29 credits taken on a future tax return filed by an unknown taxpayer. While such a future dispute is foreseeable, if the unknown taxpayer takes §29 tax credits and is challenged by the IRS, that

taxpayer can argue that *res judicata* prevents the IRS from relitigating the "claim" determined by the Confirmation Order. In sum, this Court is powerless to issue orders confirming or denying the prospective application of legal doctrines in proceedings not yet filed by parties not yet known. Accordingly, the Court lacks jurisdiction over Count VII.

### C.     Judgment as a Matter of Law

Although the Court lacks jurisdiction over Counts I-III and VII, Counts IV, V, VI, and VIII present closer questions. Plaintiffs claim that the Court can grant the relief sought by these Counts pursuant to its broad powers to give effect to and enforce the Plan and Confirmation Order. The Court agrees with Plaintiffs that such broad jurisdiction exists under 11 U.S.C. §105 to carry out the provisions of Title 11. In addition, "the court may direct the debtor and any other necessary party . . . to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan." 11 U.S.C. §1142(b).[2] Furthermore, Bankruptcy Rule 3020(d) states "[n]otwithstanding the entry of the order of confirmation, the court may issue any other order necessary to administer the estate." Thus, the Court has jurisdiction over Plaintiffs' remaining claims, the merits of which are considered next.

---

[2] In Count VI, Plaintiffs list several statutory provisions allegedly granting jurisdiction: 28 U.S.C. §§1334 and 157(a), 11 U.S.C. §§105, 1123, 1129, 1141 and 1142. Sections 1334 and 157(a) are the general grants of federal jurisdiction over bankruptcy cases, while Sections 105, 1123, 1129, 1141, and 1142 detail the power of courts to preside over bankruptcy proceedings. Section 1142 is the only operative statutory source for jurisdiction over the remaining claims.

1.     **Count IV - Enforcing Confirmation Order Against IRS as Creditor/Interested Party**

In Count IV, Plaintiffs allege that the IRS is bound by the Confirmation Order.  To the extent Plaintiffs advance this claim by again alleging that the IRS was a creditor based on the possible claim relating to the Depreciation Deduction, the Court remains unpersuaded.

The Bankruptcy Code states that

> the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner has accepted the plan.

11 U.S.C. §1141(a).  A creditor is defined as an "(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor; (B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or (C) entity that has a community claim."  11 U.S.C. §101(10).  With respect to the Dycoal bankruptcy proceeding, the IRS is none of the foregoing entities.

Plaintiffs argue that because the PLR cast doubt on the factual findings of the Confirmation Order, Dycoal owes taxes for 1998, thereby rendering the IRS a creditor.  This argument is unpersuasive.  Initially, the Court notes that no proof of claim was filed either by the IRS or on its behalf by Dycoal.  Had Dycoal believed that the IRS possessed a claim for unpaid taxes, it could have filed a proof of claim on behalf of the Service and sought determination of the amount owed.  Having failed to do so, and hoping to ascribe preclusive effect to the Confirmation Order, Plaintiffs now claim that the IRS was a creditor based on a claim that neither party recognized or asserted at any time during the bankruptcy proceeding.

20

Plaintiffs claim that cases similar to the one at bar demonstrate that the Service can be deemed a creditor, bound by a Confirmation Order, even in the absence of a proof of claim or alleged debt. In support of this argument, Plaintiffs cite *Matter of Century Vault Co.,* 416 F.2d 1035 (3d Cir. 1969), where the Court of Appeals stated that "the fact that a proof of claim has or has not been filed is immaterial." *Id.* at 1041. Although this quotation is accurate, when read in the context of the facts in *Century Vault,* the quotation does not support Plaintiffs' argument.

In *Century Vault*, three different government entities, including the Pennsylvania Department of Revenue, asserted corporate tax lien claims against the debtor. Because the lien had not been reduced to judgment, however, the referee held that the Commonwealth did not possess a valid claim because its lien was inchoate. *Id.* at 1037. The district court reversed the referee in bankruptcy and held that the claim was valid. *Id.* On appeal, immediately after the statement regarding the immateriality of the filing of a proof of claim, the Court of Appeals stated that "there is no question here that the corporation taxes are unpaid or that the bankrupt did not contest their amount prior to bankruptcy." *Id.* at 1041. It is unsurprising that the Court of Appeals found immaterial the fact that no proof of claim was filed in a case in which the taxing body and the corporate debtor both agreed that taxes were due. Precisely the opposite is true in the instant case, however. Here, the record is clear that the IRS has not asserted, and has no intention of asserting, any lien, charge, or claim against Dycoal for unpaid taxes. Accordingly, *Century Vault* is inapposite.

Plaintiffs' other appellate authorities, *Gwilliam v. United States*, 519 F.2d 407 (9th Cir. 1975) and *Bostwick v. United States*, 521 F.2d 741 (8th Cir. 1975), are inapposite for the same reason that *Century Vault* does not apply. In *Gwilliam*, the debtor admitted that he owed income

21

taxes to the United States, but requested a discharge because the taxes were due for more than three years prior to the bankruptcy. *Gwilliam*, 519 F.2d at 408. In *Bostwick*, the debtors listed the IRS as a creditor for back taxes in the amount of $68,400. *Bostwick*, 521 F.2d at 743. Like *Century Vault*, there was no dispute in *Gwilliam* or *Bostwick* that taxes were due. In stark contrast, in the instant case the IRS has not claimed, does not claim, and cannot claim that Dycoal owes any tax for 1998.

Likewise, Plaintiffs' reliance upon *In re Kilen*, 129 B.R. 538 (Bankr. N.D. Ill. 1991), is misplaced. In *Kilen*, after the debtor filed a proof of claim on behalf of the IRS, the Court stated that "the controversy can be concrete even if it is the debtor who files the proof of claim on behalf of the creditor." *Id.* at 547. Unlike *Kilen*, here neither party filed a proof of claim on behalf of the IRS.

As a fallback to their argument that the IRS is bound by the Confirmation Order as a creditor, Plaintiffs claim that even if the Service is not a creditor, "pursuant to Section 1109(b) of the Bankruptcy Code, the IRS was a party in interest with a practical stake in the outcome of this matter and therefore bound by the Plan." Am. Compl. at ¶102. In support of this contention, Plaintiffs cite *In re K.D. Co., Inc.*, 254 B.R. 480 (10th Cir. 2000), which recognized that "the Confirmed Plan and the Confirmation Order are binding on the parties under §1141 and principles of *res judicata*, regardless of whether [the parties] agreed with their provisions." *Id.* at 490. Plaintiffs also cite *In re Justice Oaks II, Ltd.*, 898 F.2d 1544 (11th Cir. 1990), where the Court of Appeals for the Eleventh Circuit applied *res judicata* to bind a non-creditor to a confirmation order. *Id.* at 1550.

22

The Court agrees generally with Plaintiffs' argument that confirmation orders, like all

final judgments on the merits, can have binding effect under *res judicata*, provided all of its

essential elements are satisfied.  In refusing to find the Dycoal Confirmation Order binding

against the IRS in the instant case, Chief Bankruptcy Judge McCullough quoted extensively from

*In re Union Golf of Florida,* 242 B.R. 51 (Bankr. M.D. Fla. 1998) where it distinguished *Justice*

*Oaks*:

> Finally, the decision of the Eleventh Circuit Court of Appeals in *In re*
> *Justice Oaks II, Ltd.*, 898 F.2d 1544 (11th Cir. 1990) is not dispositive of
> this case. The Debtor cited *Justice Oaks* to support its position that the
> County is barred by the doctrine of *res judicata* from seeking to prohibit the
> Debtor from operating its golf course as a public course. The Debtor relied
> on the Eleventh Circuit's finding that all four elements of "claim
> preclusion" were present in an order confirming a chapter 11 plan.  In
> *Justice Oaks*, however, the parties challenging the order of confirmation had
> been recognized as potential claimants in the chapter 11 case since its
> commencement, had actively participated in the case, and had been party to
> prior orders entered by the bankruptcy court while the case was pending.
> Consequently, the Eleventh Circuit's findings with respect to the 'identity of
> the parties,' the 'identity of the issues,' and the 'full and fair opportunity to
> litigate' arose in a factual and procedural context that is readily
> distinguishable from the case under consideration.

*Id.* at 59.  The fact that courts have given confirmation orders preclusive effect against parties not

statutorily bound by the Bankruptcy Code is unavailing to Plaintiffs in this case.  The foregoing

cases do not offer exceptions to the language of §1141(a), which holds that the "the provisions of

a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring

property under the plan, and any creditor, equity security holder, or general partner in the debtor .

. . ." Rather, they recognize that the doctrine of *res juducata*, in addition to §1141(a), can bind

parties to the provisions of a confirmed plan.  Unlike the cases upon which they rely, however,

Plaintiffs have not satisfied any of the requirements for *res judicata* to apply.  *Moitie*, 452 U.S. at

398. Finally, the Court observes that if the potential future disallowance of income tax deductions were sufficient to render the IRS a creditor, then the Service would be a creditor in every bankruptcy case. The Court is unaware of any statutory or case support for such an expansive, counter-intuitive proposition.

In sum, because Plaintiffs can point to no valid reason why the Court should deem the IRS within the ambit of parties included in §1141(a) of the Bankruptcy Code, the Court refuses to declare the Confirmation Order binding on the Service.

### 2. Counts V and VI - Enforcement of Confirmation Order and Determination of Placed in Service Dates to Consummate the Plan

In Counts V and VI, Plaintiffs argue that the feasibility of the Plan hinges on the future availability of §29 credits, which in turn requires that the factual findings contained in the Confirmation Order be accepted by the IRS. In Count V, Plaintiffs ask the Court to enforce the Confirmation Order against the IRS and insist that "the value delivered by the Plan and the feasibility of the Plan were grounded on these 'placed in service' findings." Am. Compl. at ¶110. In Count VI, Plaintiffs ask the Court to make an independent and binding determination of the placed in service dates because "the Debtor's ability to confirm a feasible plan was founded on the Briquetter facilities' ability to generate credits which could be monetized." Am. Compl. at ¶122. For several reasons, the Court is not persuaded that the feasibility of the Plan depends on binding placed in service findings.

In an Order dated May 27, 2005, Chief Bankruptcy Judge McCullough refused to bind the IRS to the Confirmation Order and granted the Service's motion for judgment on the pleadings on this issue. Although Judge McCullough's decision is not binding here, it is noteworthy since

he presided over the creation and implementation of Dycoal's Plan. That Judge McCullough refused to bind the IRS undermines Plaintiffs' contention that the success of Plan depends upon the binding effect of the placed in service findings.

Moreover, the feasibility requirement of the Bankruptcy Code does not mandate the complete victory Plaintiffs seek. A plan of reorganization requires that "confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. §1129(a)(11). Here, Dycoal has not argued that liquidation or further financial reorganization will be necessary. Rather, Plaintiffs have repeatedly maintained that all creditors have been paid in full, with the exception of Fairview. Thus, whether Plaintiffs can monetize the tax credits associated with the Briquetters will determine only whether Fairview is paid.

Plaintiffs insist further that the only reason Komar, Startec, and Fairview agreed to pay the outstanding creditors and accept ownership of the Briquetters in lieu of cash was the prospect of reaping the benefit of future §29 tax credits. But this demonstrates only that those companies have placed their bets and the chips will fall one way or the other, depending upon the market conditions relative to their efforts to monetize the tax credits. While undoubtedly true that the interested companies will suffer some financial loss or gain, it seems to the Court an exaggeration to claim that the Plan itself cannot be consummated, and is not feasible within the meaning of §1129, especially when all creditors except the Debtor's parent have been paid in full.

Finally, and perhaps most significantly, the Court notes that partial monetization of one of the briquetters *has already occurred*. Plaintiffs admitted that "one synthetic fuel facility has been partially monetized because the monetizers were able to structure a hedge to minimize the consequences of a successful challenge to the availability of tax credits to this facility." Pl. Br. at p. 9, n. 2. Thus, by their own admission, Plaintiffs' ability to monetize the facilities depends not on binding the IRS to the Confirmation Order, but on the risk tolerance of the market. While a binding order of this Court might assuage the concerns of potential investors, and perhaps even dramatically reduce the risk of monetizing the Briquetters, such an order is neither required nor appropriate under §1142(a) or §1129(a)(11) of the Bankruptcy Code. Therefore, Counts V and VI must be dismissed.

### 3. Count VIII - Equitable Estoppel

In Count VIII, Plaintiffs claim that the IRS is equitably estopped from contesting the placed in service dates. Even assuming, *arguendo*, that the IRS had waived sovereign immunity as to this count, Plaintiffs' claim still fails.

Equitable estoppel is appropriate in the usual case when a party proves (1) a misrepresentation by another party; (2) which he reasonably relied upon; (3) to his detriment. *U.S. v. Asmar*, 827 F.2d 907 (1987). In *Asmar*, the Court of Appeals recognized that it is "well-settled that the Government may not be estopped on the same terms as any other litigant." *Id.* at 912 (internal citations omitted). Instead, "a litigant must prove 'affirmative misconduct' to succeed on an estoppel claim against the government." *Id.* Plaintiffs fail to allege such misconduct on behalf of the IRS, although they do insist that they detrimentally relied on the failure of the IRS to appear and challenge the factual basis for the findings entered in the

26

Confirmation Order.  Plaintiffs do not allege, however, that the IRS was obliged even to participate in Dycoal's bankruptcy, much less to take a position regarding the placed in service dates of the Briquetters.  Indeed, the Service correctly argues that it has no obligation to consider the Briquetters' placed in service dates unless and until a taxpayer files a return claiming entitlement to the §29 credits.  In sum, the facts alleged here are not remotely close to the sort of affirmative misconduct required under *Asmar*.  *See Walsonavich v. U.S.*, 335 F.2d 96, 100 (3d Cir. 1964); *U.S. v. Zorger*, 407 F. Supp. 25, 28 (W.D. Pa. 1976).  Therefore, equitable estoppel does not apply and the IRS is entitled to judgment on the pleadings.


**VI.    Conclusion**

In sum, viewing the averments in the amended complaint in the light most favorable to Plaintiffs, all eight counts fail.  The Court lacks jurisdiction over Counts I, II, III, and VII because they fail to present a valid case or controversy.  Although the Court possesses subject matter jurisdiction over Counts IV, V, VI, and VIII, they fail to state a claim upon which relief can be granted.  Finally, Counts VII and VIII are not grounded in a valid waiver of sovereign immunity.  Thus, the IRS is entitled to judgment as a matter of law.

An appropriate Order follows.


Thomas M. Hardiman
United States District Judge


February 15, 2006

27